United States of America v. Martin Connearney, 25-15CR. Good morning, Mr. Egan. I understand you would like to reserve two minutes for rebuttal. Is that right? Yes. Whenever you're ready. Thank you. Good morning. May it please the Court. James Egan from Martin Connearney. This Court should remand for resentencing for two reasons. The District Court first erred in its finding concerning Mr. Connearney's criminal history. And secondly, the Court erred in applying the vulnerable victim enhancement to a fictitious individual. I'm happy to go in whatever order the Court would prefer, but I'll start off. Why don't we, I guess, well, you pick. Sorry. I guess I'll go first with the first point raised, the brief, which concerns the reliance on the clearly erroneous assessment of Mr. Connearney's criminal history. I think the government concedes, as I understand, that it was error and that that error was plain. The disagreement seems to be about the third and fourth prong of the plain error standard and how rigorously to apply that. Can I ask you, because I understand the way it's been argued, either send it back and you have a plenary resentencing or affirm, saying no, no. It would come out the same way anyway. What would be the defense's position if, say, the Court were to do a Crosby remand, often called a Jacobson remand, but in the sentencing context what we used to do in the immediate aftermath of Booker to say to the District Court, you made a mistake in that case. For those cases, it was that you apply the guidelines as mandatory matter. And then to ask the Court, knowing now the mistake you made, would you have imposed a materially different sentence? And if the Court says yes, there's a plenary resentencing. And if no, then it comes potentially back to this Court for then teeing it up, except we would now know from the District Court basically the third prong, which is would the error have had an effect on the defendant's substantial rights? Do you have a position on that? Sure. It's certainly, our position is that the District Court did make it known what, how it relied on that. It said, it cited the cases, said they were convictions, and said that that was a reason for imposing a lengthy sentence. So I don't think there's any question that needs to be resolved there. Obviously, our fallback position is, you know, Jacobson-Cosby remand. But those are obviously, the Court hasn't expressly sort of delineated when that happens. It seems to be when there's some question. As I said, I don't think there is a question. It's less preferable because the defendant gets less say in how that gets resolved on remand. Typically, the District Court takes the matter on its own without hearing from the parties. My memory is dimming, of course, to the post-Booker years. But my recollection was that the parties were generally invited to express their views. Yeah. In whatever manner the District Court decided, whether on paper or hearing, but I suppose because it wasn't a plenary resentencing initially, there was no requirement of the defendant's presence. So it could be something on the papers or it could be something live, which is the lawyers.  It was really, the matter was up to the discretion of the District Court, if, again, my memory serves. I think you're, I think actually, as I think more about it, you're correct. And this Court can guide that District Court's process by allowing. You take the view that you think of plenary resentencing. I think it's preferred here because the Court has already indicated its reliance and suggested how it was relied upon to impose a lengthy sentence. Now, if that were the case, let's say that you were to prevail on that point and get a plenary resentencing, would there then be a need for this Court to address your argument about vulnerable victim? And I say that because, correct me if I'm wrong, but I don't think that the defense objected to this vulnerable victim enhancement before the District Court. Am I correct? You're correct. So if there were a plenary sentencing, I assume this could then be raised in the first instance before the District Court and then, I don't know, depending on how the Court ruled and if there were a future appeal, this Court would have the benefit of that ruling. Is that fair? I think that's fair so long as the Court's mandate makes that clear, that it is remanding for the District Court to also on plenary, you know, resentencing. You have to say plenary resentencing. Yes, exactly. That it's not the law of the case that somehow that's been waived and not part of the case anymore. Yes, so does that answer the sort of procedural remand? So then would you go back to the vulnerable victim enhancement? And I guess assuming for the sake of argument that we were to address it now and assume that you had not waived it, how is it plain error to apply this to a fictitious victim when, to my understanding, there is no opinion of the Supreme Court or of our Court saying that it may not be applied in that way? Or am I missing something? Is there, in fact, such a governing precedent that was overlooked by the Court? There's not directly on that point, Your Honor, but I don't think plain error is so narrowly focused. The Court can look at whether under the plain text it is also clearly erroneous interpretation. And I think that's our argument here, Your Honor, is that the plain text requires knowledge, not belief. It requires a person, not an individual, represented to be. And it requires that the person is not represented to be, sorry. So there's sort of three textual language or points at which it does not apply to a fictitious person. The government, as I understand it, relies a lot on their understanding of the purpose. And I think that purpose is one. I don't take issue with that purpose. But the depravity obviously is greater when the individual is a person. And also the purpose is broader than just depravity. It's to, as this Court noted in McCall, to protect society as a whole. Could you just follow up on that? How is the depravity greater if there's a person, if the crime is simply interstate travel to have sex with a minor? Which, you know, in some circumstances, that would involve subsequent contact with the minor. And I could see that actual sexual misconduct with a minor is more severe. But if you're dealing with the travel where someone is intercepted before hitting a real minor or intercepted before reaching a hypothetical minor who doesn't exist, how is there a difference in terms of impact on a victim between those two circumstances? Where in neither case, either the real minor who's never actually contacted or the hypothetical minor who can't be contacted, either way there's never harm to a child. So how does the depravity differ? Well, I think in two ways. And taking, again, the language from the enhancement, the defendant knows or should know. So there's a knowledge component there that is greater in that instance. And then also the purpose more generally, as I was saying, from McCall, this court's decision from 98, I believe, they recognize that the purpose is not just depravity, but it's to protect society's most vulnerable who are. It's this idea that those people need greater protection. Fictitious individuals don't need that, obviously. So that's the two ways that I think that it does address depravity as being a concept that's served by this is obviously served to a greater degree when the person is real and the person, the defendant in this case, knows that that person is real or should know. All right. I think we have your argument. You have reserved two minutes for a vote. So thank you, Mr. Egan. Don't go away. Mr. Dessange for the government. May it please the Court, Rajiv Dessange for the United States. First, I'd like to offer an apology. I'm still experiencing the lingering effects of a cold from last month, so my apologies if I cough a little bit. I'd like to begin by addressing the Court's misstatements concerning the defendant's criminal history. Despite the district court's misstatements, the defendant here has the burden of showing a reasonable probability that these misstatements affected the outcome of his sentencing and that they seriously affected the fairness of the proceedings. The sentencing rationale here, the district court gave a fulsome explanation, and it was based on a determination that Mr. Connery represented as, quote, a significant danger to the public. Now, that determination rested on numerous factors, not just the one misstatement about his charges being convictions. These other factors are not contested. His offense to conduct here was prolonged and extremely disturbing. But how do we, clearly, do you accept, though, that these convictions, and whether or not the Court, whether it's a misstatement or what have you, certainly was a factor. I mean, when the Court is talking about violent history and these violent convictions that are not convictions and that that's part of the reason, I mean, I think it comes right before the Court gets into, you know, talking about why that's so serious. I don't know how you parse out and say, like, well, that wasn't really the driving factor. I assume you accept that it was certainly a factor. It was a factor towards the Court's assessment that he represented a danger to the public. And I think that was the explanation of the district court. Isn't that a big part, though, of what the Court says, that the risk to the public and the dangerousness is part of what is specified and highlighted by the Court right before imposing the sentence? It definitely references. I think, though, if you look at the sentencing explanation, there were many factors that led into that. But I think if you take away the misstatement about convictions versus charges, there's still numerous factors that support. You didn't take away the misstatement. Are you saying that if the Court said nothing about the prior convictions, that everything would be the — if the Court wasn't considering the prior convictions or the prior not convictions, it's reasonable to assume the Court would have given the exact same sentence if the Court was not — Yes, I think under circumstances, because — And what's your reason for thinking that? Because criminal history is always considered by judges. Sure. And the judge here explicitly stated that it was being considered. So a number of factors. First of all, the — there's no dispute that the district court miscalculated the criminal history. That was — the criminal history is accepted by both parties as correct in terms of the category. Second of all, the criminal history here did involve instances of violent conduct, and that's not contested. He had violated numerous protective orders. He had a number of disciplinary charges while in detention. But that's not the same as assault, battery, you know, threatening to blow something up. It's not, Your Honor, but I think it goes — if you remove that, there's still a firm foundation for the Court saying, I think you're dangerous, I'm giving you the sentence because I think you're dangerous. There's also the factor that the district court gave a within-guideline sentence, and the burden under plain error is that he has to show a reasonable probability of a different outcome, which means in this case a reasonable probability the district court would have varied below the guideline range. There's simply nothing in the record that suggests if you take out those two — those two misstatements that there would have been a variance here below the guideline range. And again, he — the Court also emphasized he had a lifelong history of mental health issues that — including violent behavior and repeated suicidal and homicidal ideation. Mr. Connery himself — Violent behavior? Homicidal and suicidal ideation? Is that violent behavior? It's not. It's — well, it's — it goes to us as dangerous, potential dangerous. And Mr. Connery himself acknowledged his difficulty controlling his own rage and said that if he hadn't been arrested, he would have killed someone. So, Counsel, these seem like awfully good arguments to present to a sentencing judge to say — Which can they work? — notwithstanding the fact that this defendant does not have certain convictions, he is nevertheless violent and dangerous. But here he didn't have that significant a criminal history in real life compared to what the district court said it thought his criminal history was, right? So if, for example, you had a defendant who had been convicted of three murders and the judge accidentally said, oh, he was also convicted of shoplifting, and that were erroneous statements, you'd say, well, gosh, there's no chance that an additional shoplifting conviction could have made a difference in the judge's sentencing calculus. But by contrast, if you have only a misdemeanor or only something in the past that's, you know, one conviction, and then you hypothesize, as the court did, that there were additional two prior felony convictions, now all of a sudden it's a dramatic overstatement of the criminal history. I guess how do we — it seems hard for me to accept how we can overlook that. So can I ask you the same remedial question I addressed to your adversary? If we, as everyone seems to agree, find that the district court substantially misstated Mr. Gennarine's criminal history, what is the remedy? Assuming we don't go with uniform, I had posited the possibility of a Crosby remand. What is the government's view as to the appropriateness of plenary resentencing as opposed to a Crosby remand? If I may, just first, when we say that there is a misunderstanding of the criminal history, again, I want to emphasize that there's no contest here that there was a miscalculation of the history or the points. No, I understand that. I'm just talking about the portion of the transcript where the district court cited part of its reasoning, including a misrecitation. And it may have been a slip of the tongue, or it may have been a genuine misunderstanding. We don't know. Right. So I think we have to take the district court at its word. So in terms of remedy, assuming that we were not to go your way, and I'm not saying we wouldn't go your way, but if we were to go the other way, tell me what's the government's thought as between a Crosby remand or simply just saying, look, the cleanest thing is a plenary resentencing. Well, I think if those are the two options, we would prefer a Crosby-Jacobson remand. Just to answer a single question initially, and if you had not stated that he had two convictions or three convictions for these offenses, would you have imposed the same sentence? I think one thing we see when we have Jacobson remands, or we have remands that are where the spirit of the remand is pretty narrow, we get into litigation in the district court about the scope of the remand. And so if the court is inclined to do a Jacobson remand, I would request that it be very clear as to the narrowness of it for that initial step. If the court says, oh, well, yes, it would have changed my decision, or it could have changed my decision, then let's have a plenary resentencing. But the initial step should be something that the court can get papers on. It shouldn't have to have a plenary-like hearing for this purpose. Let me pose another question, similar to what I asked your adversary. If there were to be a plenary resentencing here, either because we directly order it or hypothetically after a Crosby remand where the district court says we should have a plenary resentencing, do you agree that at that point, if it's plenary, the dependent would then be free to initially make its vulnerable victim argument to the district court? Your Honor, yes. I think this gets to, I think, the problem of the Jacobson remand, though, when you have a defendant who really stood by and let this issue of the vulnerable victim argument. Well, that would be up to us to decide whether it were limited or not and specify the limits. But I'm saying hypothesizing a world where there is a plenary resentencing, would I be correct in stating at that point, because it's plenary, the defendant would be able to then say to the district court, now that we're here afresh, let me object to the vulnerable victim enhancement and make all these arguments to the district court in the first instance? Or is there some reason why we should be addressing this in the first instance because here we are? I think it's, Your Honor, the government would prefer that you address this question. It's a purely legal question. I don't think it's something that necessarily would require further factual development here. The facts are uncontested. And, again, I think how this intersects with the plenary standard, I think, is important. By doing a Jacobson remand itself, even the small one, you're putting the defendant in a better position than he would have been if he had objected to, A, the criminal history aspect and the vulnerable victim. You could potentially – No, that's the whole point. Right. Had he objected to the criminal history, the judge might very well have said, we don't know. Oh, my gosh. I am so sorry. I've misstated that. You're not as dangerous as I think you are. I am, therefore, going to give you a lower sentence. So we can't say right now that the defendant's in a better position for not having objected to the criminal history. If we conclude we don't know what the district court did, maybe it would have gone lower. Maybe it would have kept the same. You are putting him in a better position because the burden is on the defendant right now to show the reasonable probability. You're now saying we are not going to decide that question. We're asking the district court to have the burden of showing us what the – if there is a reasonable probability. That's not what plain error review is about. And I think especially under these circumstances where you have an error, a misstatement that – it's not novel or complex. This Court has applied plain error in numerous cases where a defendant has the opportunity to object when they hear a misstatement of fact at sentencing, including in the Moore case. And so I think under those circumstances, plain error should be applied. It should be applied rigorously. And as to the vulnerable victim enhancement, I think we have a strong argument that there was a waiver here given the circumstances where you have the government kind of going above and beyond and flagging an issue for the court and defendant about the – whether a vulnerable victim can be fictitious, making an extended argument in its papers. And then you have a defendant who doesn't respond to that and who actually says – who adopts the guidelines calculations in his sentencing memorandum and says, I have no objections to the PSR at sentencing. Seven months later, plenty of time to research the issue, to think about arguments. That didn't happen. So under those circumstances, we think the court should find a waiver and so that it becomes law of the case so that if you are sending it back on a Jacobson remand for the criminal history issue, it's confined to that, even if there is a sentencing hearing, that application of the vulnerable victim enhancement, I think, should be law of the case now. Can I just say one other thing, and this is probably obvious, and I recognize you are not the AUSA here, but the misstatement of criminal history obviously was undoubtedly an honest mistake. But we probably wouldn't be here arguing if, frankly, both counsel, and I know neither one of you were counsel below, but had been paying attention and stood up and pointed out the misstatement to the district court. So this error could have quite easily been remedied in the first instance. So perhaps both of you can go back to your offices and just emphasize the need for objections or corrections of the record on the spot, because there's just no need for at least the first issue to have ever happened. It just ends with that. We agree, Your Honor. We think, though, under the circumstances, that that's the reason that plain error applies, and in order to avoid the further waste of resources, that this court can decide the issue. Thank you. Mr. Egan, you have two minutes to rebuttal. Let's focus on the first point, and with respect, I think, to the question about the scope of remand, assuming you reached that question. I think there's a couple reasons, again, why the court should remand for plenary resentencing. As Judge Lee indicated, the criminal history is sort of, as the commission has indicated, really important. The commission has said that a defendant with a greater criminal history is deserving a greater sentence to deter and to prevent recidivism. All of those factors sort of are present here. There's a question about, I think the government has said, well, if we just ask the court to remove conviction from its analysis, I think that's a problem, too, because underneath those in the PSR, we just have bare arrest records. We have no narrative, even, from the probation office about what was alleged to have happened. So we can't just remove the word conviction here. We have to kind of remove the whole thing, the whole citation to those cases and any reliance on them. And then I would say the criminal history here, I take your point, Judge Farnardini, and I will pass it along, would only indicate that parties had a shared understanding of what the criminal history was, and PSR went into court. The court ratified that understanding by adopting the PSR, and then at the end of a fairly long sentencing, made this misstatement sort of out of nowhere. So, yeah, we can all do better, and we'll try. No, and that's understood. Obviously, counsel on both sides were trying to do their best and just point out that remaining alert and fixing things as soon as possible is usually the preferable course. Not that we don't love to see you all. Thank you very much to all counsel. We appreciate it. We will take the case under advisement.